USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
JETMAX LIMITED,                                              :
                                                             :
                              Plaintiff,                     :
                                                             :
              -v-                                            :   15-cv-9597 (KBF)
                                                             :
BIG LOTS, INC., ADVANCE                                      :   OPINION & ORDER
INTERNATIONAL, INC. and HERBERT                              :
FEINBERG,                                                    :
                                                             :
                              Defendants.                    :
------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

  This case centers around a copyright infringement dispute between plaintiff Jetmax Limited ("Jetmax") and defendants Big Lots, Inc. ("Big Lots"), Advance International, Inc. ("Advance"), and Herbert Feinberg ("Feinberg") regarding Jetmax's Metal Wire Wrapped Tear Drop Light Set (the "Tear Drop Light Set"), the subject of U.S. Copyright Registration No. VAu 978-587 (the "'587 Copyright Registration"). The Tear Drop Light Set is an ornamental light set comprised of a series of molded, decorative tear shaped covered lights with a wire frame over the covers.

  Now before the Court is plaintiff's motion for summary judgment (ECF No. 34) and defendants' cross-motion for summary judgment (ECF No. 42). Plaintiff seeks a judgment that defendants have willfully infringed the '587 Copyright Registration through their sale of a substantially similar light set. (See Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment of Willful

Copyright Infringement ("Pl.'s Mem. in Supp."), ECF No. 35, at 6.)  In opposition, and in furtherance of their cross-motion, defendants argue that plaintiff does not own a valid certificate of copyright registration and that the Tear Drop Light Set is not copyrightable.  (Defendants Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendants Cross-Motion for Summary Judgment ("Dfs.' Mem. in Supp."), ECF No. 42, at 4-5.)  Specifically, defendants argue that the Tear Drop Light Set is not copyrightable because it is a useful article and because it lacks originality.  (Id.)

As discussed below, the Court determines that under the Supreme Court's recent decision in Star Athletica, L.L.C. v. Varsity Brands, Inc., 137 S. Ct. 1002 (2017), the Tear Drop Light Set contains artistic elements that "can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article."  See 17 U.S.C. § 101.  Accordingly, the Court rejects defendants' argument that the Tear Drop Light Set in its entirety it is not entitled to copyright protection as a useful article.  The Court also finds, however, that there are genuine disputes of material fact concerning whether plaintiff owns a valid certificate of copyright registration covering the Tear Drop Light Set and whether the Tear Drop Light Set is sufficiently original to warrant copyright protection.  Accordingly, plaintiff's motion for summary judgment is DENIED and defendants' cross-motion for summary judgment is also DENIED.

I. BACKGROUND[1]

    A.    <u>Factual Background</u>

Jetmax is a Hong Kong corporation that designs, manufactures, and sells a variety of furniture, lighting, and home décor items. (Defendants Response to [sic] Jetmax Limited's Statement of Material Facts on Plaintiff's Motion for Summary Judgment ("Defs.' 56.1 Resp.") ¶¶ 1, 20, ECF No. 45.) At the heart of the instant dispute is the Tear Drop Light Set, manufactured and offered for sale by Jetmax. (<u>Id.</u> ¶ 32.) The Tear Drop Light set, as depicted below, is an ornamental light set comprised of a series of molded, decorative tear shaped covers with a wire frame over the covers.



Tear Drop Light Set

---

[1] The following facts are undisputed unless otherwise noted. <u>See</u> Fed. R. Civ. P. 56.

(Declaration of Reena Jain in Support of Plaintiff's Motion for Summary Judgment of Willful Copyright Infringement ("Jain Decl.") Ex. 1, ECF No. 36-1.)

The Tear Drop Light Set was designed in 2004 and has been on sale since September 2005. (Defs.' 56.1 Resp. ¶¶ 24, 32.) The set contains a string of lights that are each surrounded by a plastic, tear drop shaped, iridescent cover. The plastic covers each contain eight sets of double grooves. (Defs.' 56.1 Resp. ¶ 67.) Each cover is in turn surrounded by a wire frame comprised of eight pieces of wire that rest between the double grooves. (Defs.' 56.1 Resp. ¶ 67.) A plastic stone hangs from the tip of each wire frame. (See Jain Decl. Ex 14 at 3.)

The Tear Drop Light Set, along with seven other light sets, is the subject of the '587 Copyright Registration. (Plaintiff's Responses to Defendants' Statement of Material Facts ("Pl.'s 56.1 Resp.") ¶¶ 5-6, ECF No. 53; Defs.' 56.1 Resp. ¶ 29; see Affirmation of Harlan Lazarus in Opposition to the Plaintiff's Motion for Summary Judgment and in Support of Defendants Cross-Motion for Summary Judgment ("Lazarus Aff.") Ex. A, ECF No. 43-1.) Jetmax claims authorship of the '587 Copyright Registration, a fact that defendants dispute. (Defs.' 56.1 Resp. ¶ 30.)

Defendant Advance, a New York corporation engaged in the wholesale manufacturing industry, produced the allegedly infringing product (the "Advance Light Set"), depicted below. The Advance Light Set has been sold at defendant Big Lots's stores since early 2015. (Defs.' 56.1 Resp. ¶¶ 42-43; Pl.'s 56.1 Resp. ¶¶ 8-20.) Similar to the Tear Drop Light Set, the Advance Light Set has a teardrop shaped plastic cover with eight sets of double grooves, as well as a decorative wire frame

4

containing eight pieces of wire and the come together in a question mark form.
(Defs.' 56.1 Resp. ¶ 67.) The Advance Light Set does not contain an ornamental
dangly and the cover does not have an iridescent finish. (Pl.'s 56.1 Resp. ¶ 17.)


Advance Light Set

(Jain Decl. Ex. 2, ECF No. 36-2.)

B. Procedural Background

Plaintiff commenced this action on December 8, 2015, alleging that defendants knowingly and willfully infringed upon the '587 Copyright by producing and selling the Advance Light Set. (See Complaint, ECF No. 1.) Following the close of discovery, plaintiff moved for summary judgment on its sole claim of copyright infringement. (ECF No. 34.) Defendants opposed the motion and filed a cross-motion for summary judgment. (ECF No. 42.) In opposition to plaintiff's motion and in furtherance of their cross-motion, defendants argue that plaintiff does not own a valid certificate of copyright registration and that the Tear Drop Light Set is

5

not copyrightable. (Dfs.' Mem. in Supp. at 4-5.) Specifically, defendants argue that the Tear Drop Light Set is not copyrightable because it is a useful article and because it lacks originality. (Id.)

After the parties' motions became fully briefed, the Supreme Court issued its decision in Star Athletica, L.L.C. v. Varsity Brands, Inc., 137 S. Ct. 1002 (2017), which resolved widespread disagreement over the proper test for determining whether the design of a useful article is entitled to copyright protection under Section 101 of the Copyright Act, 17 U.S.C. § 101. Star Athletica, 137 S. Ct. at 1007. This Court requested supplemental briefing from the parties analyzing the impact, if any, of Star Athletica on the pending cross-motions for summary judgment. (ECF No. 60.) The Court received the parties' responsive submissions on August 16, 2017. (ECF Nos. 61, 62.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment may not be granted unless a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden on a particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor at trial. Id. at 322-23.

6

In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010) (citing LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005)). Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks, citations, and alterations omitted).

III. DISCUSSION

Plaintiff Jetmax seeks a judgment that defendants have willfully infringed the '587 Copyright Registration covering the Tear Drop Light Set through their sale of the Advance Light Set. (See Pl.'s Mem. in Supp. at 6.) "To prove a claim of copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original." Urbont v. Sony Music Entm't, 831 F.3d 80, 88 (2d Cir. 2016) (citing Boisson v. Banian, Ltd., 273 F.3d 262, 267 (2d Cir. 2001)). In opposition to plaintiff's motion and in support of their cross-motion for summary judgment, defendants argue that Jetmax is not the valid owner of the '587 Copyright Registration and that the Tear Drop Light Set is

7

not copyrightable because it is a useful article and because it lacks originality. (Dfs.' Mem. in Supp. at 4-5.) As discussed below, the Court concludes that the Tear Drop Light Set is potentially eligible for copyright protection because its decorative covers "can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." See 17 U.S.C. § 101. However, the Court also finds that there are genuine disputes of material facts concerning whether Jetmax is the valid owner of the '587 Copyright Registration and whether the Tear Drop Light Set is sufficiently original. Accordingly, summary judgment on these issues in inappropriate.

A. Ownership

Jetmax claims that it is the owner of the '587 Copyright Registration because it has produced the '587 Copyright Registration that lists Jetmax as the "author." (Pl.'s Mem. in Supp. at 9.) The Copyright Act provides that "[i]n any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). "However, 'a certificate of registration creates no irrebuttable presumption of copyright validity,' and 'where other evidence in the record casts doubt on the question, validity will not be assumed.'" Urbont, 831 F.3d at 89 (quoting Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc., 342 F.3d 149, 166 (2d Cir. 2003)). While Jetmax bears the burden of proving copyright ownership, defendants—as the

8

party challenging the validity of the copyright registration—have the burden of proving that the '587 Copyright Registration is invalid. Id.

In its complaint, Jetmax alleges that "[t]he Tear Drop Light Set was designed in 2004 by an employee of Jetmax in the scope of their employment as work for hire." (Compl. ¶ 14; see also Declaration of Stephen Cheung in Support of Plaintiff's Motion for Summary Judgment of Willful Copyright Infringement ("Cheung Decl.") ¶ 16, ECF No. 37.) Plaintiff acknowledges that the designer was paid by a company called Winners Manufacturing. (See Defs.' 56.1 Resp. ¶ 25.) In support of its instant motion, Jetmax states that "[u]nder Chinese law, only Chinese entities are allowed to have employees based in mainland-China" and therefore "Winners Manufacturing ('Winners'), a Chinese corporation . . . serves as an intermediary employer for employees working for Jetmax in mainland-China." (Cheung Decl. ¶¶ 6-7.)

Under the Copyright Act, "an 'employer' who hires another to create a copyrightable work is the 'author' of the work for purposes of the statute, absent an agreement to the contrary." Playboy Enterprises, Inc. v. Dumas, 53 F.3d 549, 554 (2d Cir. 1995); see Urbont, 831 F.3d at 89. "Because the statute does not define 'employer' or 'author,' courts apply what is known as the 'instance and expense test.'" Urbont, 831 F.3d at 89. "As a general rule, [a] work is made at the hiring party's 'instance and expense' when the employer induces the creation of the work and has the right to direct and supervise the manner in which the work is carried out." Id. (citations and internal quotation marks omitted).

Here, the Court concludes that there are genuine disputes of material facts concerning whether the Tear Drop Light Set was made at Jetmax's "instance and expense." For example, during the deposition of Jetmax's owner and operator Stephen Cheung, Cheung appeared to suggest that the design employees in mainland China were paid and employed by Winners. (See Lazarus Aff. Ex. D, ECF No. 43-6.) In addition, defendants argue with some force that plaintiff improperly failed to disclose the existence of was Winners in its initial Rule 26 disclosures and have failed to sufficiently produce responsive documents concerning Winners. (See Dfs.' Mem. in Supp. at 13-72.) In short, there are triable issues of fact and whether plaintiff is the valid owner of the '587 Copyright Registration cannot be decided on summary judgment.

B.    Separability

The Copyright Act provides protection for "pictorial, graphic, or sculptural features" of the "design of a useful article" only if those features "can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." 17 U.S.C. §§ 101, 102(a). A useful article is defined as "article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." Id. § 101. Here, the parties do not dispute that the Tear Drop Light Set is a useful article insofar as it serves the "intrinsic utilitarian function" or providing light to a room. Rather, the parties strongly disagree regarding whether the Tear Drop Light Set contains artistic elements that are sufficiently separable in order to merit copyright protection.

10

Having carefully considered this question, the Court finds that the Tear Drop Light Set does contain artistic elements—the decorative covers—that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

After the parties' cross-motions became fully briefed, the Supreme Court issued its decision in Star Athletica, L.L.C. v. Varsity Brands, Inc., 137 S. Ct. 1002 (2017), which resolved widespread disagreement over the proper test for determining whether the design of a useful article is entitled to copyright protection. As noted above, the Court requested and received supplemental briefing from the parties analyzing the impact, if any, of Star Athletica on the pending motions.

In Star Athletica, respondents Varsity Brands, Inc. and certain affiliates (collectively "Varsity")—companies that design and manufacture cheerleading uniforms and other athletic apparel and accessories—sued petitioner Star Athletica, LLC, a competitor, claiming in relevant part that Star Athletica infringed five of Varsity's copyrighted designs. See Star Athletica, 137 S. Ct. at 1007-08. The designs, which appear on the surface of cheerleading uniforms and other garments, were mostly arrangements and combinations of lines, colors, shapes, stripes, and chevrons. See id. at 107. The United States District Court for the Western District of Tennessee granted summary judgment to Star Athletica on Varsity's copyright infringement claim, holding that Varsity's designs did not qualify as protectable pictorial, graphic, or sculptural works because they served the useful, or

11

"utilitarian," function of identifying the garments as "cheerleading uniforms" and therefore could not be "physically or conceptually" separated under Section 101 of the Act "from the utilitarian function" of the uniform.  See id. at 1007-08.  The Court of appeals for the Sixth Circuit reversed.  See id. at 1008.

The Supreme Court "granted certiorari to resolve widespread disagreement over the proper test for implementing § 101's separate-identification and independent-existence requirements."  Id. at 1007.  The Supreme Court held "that a feature incorporated into the design of a useful article is eligible for copyright protection only if the feature (1) can be perceived as a two- or three-dimensional work of art separate from the useful article and (2) would qualify as a protectable pictorial, graphic, or sculptural work—either on its own or fixed in some other tangible medium of expression—if it were imagined separately from the useful article into which it is incorporated."  Id.

In establishing this new test, the Supreme Court rejected various forms of previously applied separability analysis, including analysis initially relied on by the parties on the instant motions.  The Supreme Court clarified that it is no longer important whether an artistic element was originally incorporated into a useful article or created independently, id. at 1011, and that a useful article need not be equally or similarly useful once the artistic element is removed, id. at 1013-14.  Similarly, a party need not show that the extracted element is solely artistic, that it was designed free from considerations of utility, or that it would be marketable once separated.  Id. at 1013-15.  Finally, the Supreme Court abandoned the physical-

conceptual separability distinction, stating that the statute's separability analysis is "a conceptual undertaking." Id. at 1014.

Applying the test to the cheerleading uniforms at issue, the Court determined that the two-dimensional design features were separable elements available for copyright protection. Id. at 1012. Each prong of the Court's test was met as (1) the colors, stripes, and chevrons could be identified as "features having pictorial, graphic, or sculptural qualities"; and (2) those elements, when imagined separately and applied to another medium, would qualify as "two-dimensional . . . works of . . . art." Id. (quoting 17 U.S.C. § 101).

Applying the two-part test from Star Athletica here, the Court determines that the decorative covers of the Tear Drop Light Set "can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the [Tear Drop Light Set]." 17 U.S.C. § 101; Star Athletica, 137 S. Ct. at 1008. As the Supreme Court explained, "[t]he first requirement—separate identification—is not onerous. The decisionmaker need only be able to look at the useful article and spot some two- or three-dimensional element that appears to have pictorial, graphic, or sculptural qualities." Star Athletica, 137 S. Ct. at 1010. The Tear Drop Light Set undoubtedly has three-dimensional decorative covers that have sculptural qualities. The second "independent-existence requirement is ordinarily more difficult to satisfy. The decisionmaker must determine that the separately identified feature has the capacity to exist apart from the utilitarian aspects of the article." Id. Again, this requirement is satisfied in this case. The decorative covers are

13

sculptural works that are capable of existing apart from the utilitarian aspect of the light set, i.e. the light bulbs and other components that cause the Tear Drop Light Set to light a room.² The primary purpose of the cover is artistic; once the covers are removed, the remainder is a functioning but unadorned light string.



C.   Originality

As noted above, in order to prove a claim of copyright infringement, Jetmax must also show that the constituent elements of the work at issue (the decorative covers of the Tear Drop Light Set) are original. See Urbont, 831 F.3d at 88. To prove that a work is original, "it must be independently created by the author and possess 'at least some minimal degree of creativity.'" Scholz Design, Inc. v. Sard Custom Homes, LLC, 691 F.3d 182, 186 (2d Cir. 2012) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345 (1991)). The Court notes that "the requisite level of creativity is extremely low." Feist, 499 U.S. at 345. While it appears to the

---

² Even if the covers reduce glare and serve some utilitarian function, the Supreme Court explained that the imagined remainder of the article "left behind" once the pictorial, graphical, or sculptural element is removed need not "be a fully functioning useful article at all, much less an equally useful one." Star Athletica, 137 S. Ct. at 1014.

Court that the Tear Drop Light set is likely original, the Court determines that there are nevertheless genuine disputes of material fact exist on this issue and the Court reserves its judgment on this issue for trial.

IV. CONCLUSION

For the aforementioned reasons, plaintiff's motion for summary judgment is DENIED and defendants' cross-motion for summary judgment is also DENIED. The Court will issue a separate order forthwith setting a near-in trial schedule for this action.

The Clerk of Court is directed to terminate the motions at ECF Nos. 34, 42.

SO ORDERED.

Dated: New York, New York
August 28, 2017

_____
KATHERINE B. FORREST
United States District Judge